UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH LYNN K.,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.
_____/

Case No. 24-13024

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT (ECF Nos. 9, 13)**

## I. INTRODUCTION

Plaintiff Sarah Lynn K. filed a Title II application for a period of disability and disability insurance benefits on February 20, 2020, alleging disability beginning on December 31, 2017. (ECF No. 4-2, PageID.36). The application was denied at the initial administrative level on July 7, 2021, and upon reconsideration on August 18, 2022. (*Id.*; ECF No. 4-3, PageID.85–114, 119–35, 137–41). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on August 22, 2022, which took place on September 21, 2023. (ECF No. 4-3, PageID.59, 142–43). Following the hearing, the ALJ issued an unfavorable decision on November 22, 2023, and the Appeals Council denied Plaintiff's request for review on September 20, 2024. (ECF No. 4-2, PageID.20–22, 33–35).

The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").  *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 Fed. App'x 570 (6th Cir. 2003); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006).  The case is now before the court for review of that decision under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  (ECF No. 6).

After careful scrutiny of the record and the parties' briefs, and for the reasons below, Plaintiff's *Motion for Summary Judgment* (ECF No. 9) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 13) is **GRANTED**, and the administrative decision is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. N.L.R.B.*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the

SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.   STATUTORY AND REGULATORY FRAMEWORK

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[1]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing

*Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

## IV. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 35 years old on the alleged onset date and 41 years old at the

time of the ALJ's decision. (ECF No. 4-2, PageID.48). In terms of education and

past employment, Plaintiff completed two years of college and worked as a

paralegal, material handler, and court clerk. (ECF No. 4-3, PageID.260–61). The

record reveals several ailments, including, *inter alia*, bilateral carpal tunnel

syndrome; degenerative disc disease of the cervical and lumbar spine; degenerative

facet arthropathy of the lumbar spine; migraines; fibromyalgia; Von Willebrand's

disease; as well as PTSD, ADHD, anxiety, depression, and other psychiatric

symptoms. (*Id.* at PageID.43–47).

Following an administrative hearing, and employing the five-step process,

the ALJ found at **Step One** that Plaintiff "has not engaged in substantial gainful

activity since December 31, 2017, the alleged onset date[.]" (ECF No. 4-2,

PageID.38). At **Step Two**, the ALJ found that Plaintiff suffers from the following

severe impairments under 20 C.F.R. § 404.1520(c):

> arthritis/degenerative disc disease of the lumbar spine;
> arthritis/degenerative disc disease of the cervical spine; psoriatic
> arthritis; fibromyalgia; carpal tunnel syndrome, status post release
> surgeries; migraines; mixed connective tissue disease; hypertension;
> Raynaud's syndrome; TMJ dysfunction; Von Willebrand's disease;
> obesity; polycystic ovarian syndrome (PCOS); post-traumatic stress

disorder (PTSD); attention deficit hyperactivity disorder (ADHD); anxiety disorder; major depressive disorder; borderline personality disorder; iron deficiency anemia; restless leg syndrome; and insomnia.

(*Id.* at PageID.39).  Despite this multiplicity of ailments, the ALJ concluded at

**Step Three** of the analysis that none of Plaintiff's impairments, nor a combination

of her impairments, met or medically equaled the severity of one of those listed in

the applicable regulations.  (*Id.* at PageID.39–41).

Next, the ALJ articulated Plaintiff's Residual Functional Capacity ("RFC")

as follows:

the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except the claimant requires work limited to simple routine tasks with no set hourly quotas that does not involve conveyor belt or assembly line duties; and there should be no more than occasional changes in the routine work setting; can lift and/or carry 5 pounds frequently, and 10 pounds occasionally (from very little up to 1/3 of an 8-hour workday); can stand and/or walk (with normal breaks) for 2 hours in an eight-hour workday, but requires the opportunity to stand for 15 minutes at one time before needing to sit for 2 minutes before resuming standing so long as they are not off task; can sit (with normal breaks) for 6 hours in an eight-hour workday, but requires the opportunity to sit for 30 minutes at one time before needing to stand for 2 minutes before resuming sitting so long as they are not off task; can perform pushing and pulling motions with the upper and lower extremities with the aforementioned weight restrictions for two-thirds of an 8-hour workday; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for two-thirds of an 8-hour workday; needs to avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors; no more than occasional exposure to blinking or flashing lights; no more than frequent concentrated exposure to direct sunlight; no more than occasional exposure to very loud noises (SCO

Code 5 level noise that is on par with a rock concert or jack hammer); job responsibilities do not include the use of hand-held vibrating or power tools; needs to be restricted to a work environment with good ventilation that allows the claimant to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity; needs to be restricted to a work environment that allows the claimant to avoid frequent concentrated exposure to pulmonary irritants such as fumes, dust gases, and smoke; and can perform occasionally: climbing stairs with handrails, stooping, crouching, kneeling, and crawling, but needs to avoid climbing ladders, scaffolds, and ropes.

(*Id.* at PageID.41).   At **Step Four**, having consulted a Vocational Expert ("VE"), the ALJ concluded that Plaintiff has past work as a material handler; teacher's assistant/day care nursery school attendant; contract security guard; radio dispatcher; and paralegal, but she "is unable to perform past relevant work as actually or generally performed."  (*Id.* at PageID.47–48).

The ALJ next concluded, at **Step Five**, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at PageID.48).  Based upon the VE's testimony, the ALJ identified the following as representative occupations: a "document preparer," a "call out operator," and an "order clerk."  (*Id.* at PageID.49).  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability . . . from December 31, 2017, through the date of this decision."  Based on these findings, the ALJ denied Plaintiff's claim.  (*Id.* at PageID.50).

## V.   DISCUSSION

Plaintiff makes one broad argument in support of her position that the ALJ committed a reversible error.  Specifically, she maintains that the ALJ's determination is not supported by substantial evidence, and so he failed to construct a logical bridge from the opinion evidence to his conclusion.  (ECF No. 9, PageID.8788).  This argument, in turn, breaks down into four sub-parts.  First, she contends that the ALJ failed to properly evaluate the medical opinion of Shanthini Daniel, M.D.  (*Id.* at PageID.8789–91).  Second, Plaintiff asserts that the ALJ put too much weight on the medical opinion of consultative examiner Cynthia Shelby-Lane, M.D.  (*Id.* at PageID.8791–92).  Third, Plaintiff posits that the ALJ did not consider all the medical opinions in the record in violation of federal regulations.  (*Id.* at PageID.8792–94).  Lastly, she insists that because the ALJ did not properly consider the medical opinion evidence, the ALJ's determination is not supported by substantial evidence.  The Court addresses each contention in turn.

### A.   The ALJ's Consideration of Dr. Daniel's Medical Opinion

On August 12, 2022, non-examining State Agency medical consultant Dr. Shanthini Daniel examined Plaintiff's medical records.  Upon review, Dr. Daniel determined the following functional limitations: occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand/walk for a total of two hours; sit for a total of about six hours; no constant push and pull; avoid uneven terrain;

limitations of jobs that require constant neck movements; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and avoid concentrated exposure of extreme cold/hot and vibration. (ECF No. 9, PageID.8789; ECF No. 4-3, PageID.111–12). Ultimately, the ALJ deemed this opinion to be "not persuasive." (ECF No. 4-2, PageID.47). Plaintiff contends that this conclusion amounts to reversible error. The Court disagrees.

Federal regulations require ALJs to explain how certain factors affect their evaluation of medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c. When weighing the persuasiveness of medical opinions, ALJs consider five factors, namely (1) supportability; (2) consistency; (3) the medical source's relationship with the disability claimant; (4) the medical source's specialization in any given field, if any; and (5) other factors that tend to support or contradict the finding in a medical opinion, such as the medical source's familiarity with other evidence in the claim. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). As supportability and consistency are the most important factors, ALJs need only articulate their reasoning on those factors. *See* 20 C.F.R. § 404.1520c(b)(2).

Supportability means that a medical opinion is more persuasive the "more the relevant objective medical evidence and supporting explanations presented by a medical source" support the opined limitations. 20 C.F.R. § 404.1520c(c)(1). "In

9

practice, the supportability factor 'concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.'" *James A.M. v. Comm'r of Soc. Sec.*, No. 22-12334, 2024 WL 1224402, at *2 (E.D. Mich. Mar. 21, 2024) (quoting *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021)). Likewise, when a medical opinion is "consistent" with the evidence from medical and nonmedical sources in the record, that opinion is more persuasive. 20 C.F.R. § 404.1520c(c)(2). In short, "consistency is about how the medical opinion conflicts with evidence in the record, whereas supportability is about how the medical opinion was soundly reached." *James A.M.*, 2024 WL 1224402, at *2 n.1.

"An ALJ can satisfy his duty to consider the medical opinions by 'indirectly attacking the supportability of the . . . opinion or its consistency with other evidence in the record.'" *Parker v. Comm'r of Soc. Sec.*, No. 2:20-CV-10961, 2021 WL 4205060, at *8 (E.D. Mich. July 6, 2021) (quoting *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020)), *report and recommendation adopted*, 2021 WL 3508557 (E.D. Mich. Aug. 10, 2021). And even if the ALJ does not use the terms "supportability" or "consistency," that "does not necessarily mean the ALJ did not consider these factors." *James A.M.*, 2024 WL 1224402, at *2 (citation omitted).

Plaintiff says that the ALJ did not adequately articulate why Dr. Daniel's opinion was unpersuasive because he did not sufficiently address the supportability and consistency factors.  (ECF No. 9, PageID.8789–90).  She highlights the ALJ's purportedly conclusory statement that Dr. Daniel's findings are not persuasive because "there is a large amount of medical evidence" and that evidence "support[s] a finding that [Plaintiff] could perform a reduced range of sedentary work."  (ECF No, 4-2, PageID.47).  To that end, Plaintiff seemingly suggests that the ALJ's failure on the supportability and consistency factors amounts to reversible error because he did not expressly consider one specific limitation, namely Dr. Daniel's note that "jobs requiring constant full neck movements will be limited."  (ECF No. 9, PageID.8790).  That said, Plaintiff did not explain how consideration of this limitation would affect or further limit the ALJ's RFC determination.

Defendant, the Commissioner of the Social Security Administration, ("Commissioner") disagrees with Plaintiff's characterization of the ALJ's assessment of Dr. Daniel's evaluation.  (ECF No. 13, PageID.8810–11).  For starters, the Commissioner points out that Dr. Daniel herself remarked that she "need[ed] some fairly recent objective exam."  (ECF No. 4-3, PageID.113).  The ALJ acknowledged Dr. Daniel's notation regarding "very little updated evidence," and, from there, deemed her opinion unpersuasive given the large amount of

medical evidence in the record.  (ECF No. 4-2, PageID.47).  According to the Commissioner, this addressed the supportability factor.  (ECF No. 13, PageID.8810–11).  As for consistency, the Commissioner points out that the ALJ concluded that the medical evidence in the record—which he described at length—was consistent with the reduced range of sedentary work reflected in the RFC more so than Dr. Daniel's opinion regarding a reduced range of light work.  (*Id.* at PageID.8811).  The Commissioner also argues that the ALJ need only assess the persuasiveness of a medical source's opinion as a whole, not the individual limitations suggested therein.  Accordingly, the ALJ did not need to address individually Dr. Daniel's "vague" determination that "jobs requiring constant full neck movements will be limited."  (*Id.* at PageID.8811–12).

In her reply, Plaintiff overlooks much of the Commissioner's argument.  She zeroes in on the "vague" descriptor and concludes that the Commissioner's position is that Dr. Daniel's opinion was vague and that was why the ALJ did not need to consider it.  (ECF No. 14, PageID.8821–22).  Since the ALJ did not refer to Dr. Daniel's opinion as vague in his decision, Plaintiff reasons that the Commissioner has proffered no more than an impermissible post hoc rationalization for the ALJ's reasoning.  (*Id.* at PageID.8822).

Prior to addressing Dr. Daniel's medical opinion, the ALJ described, in detail, Plaintiff's physical and psychiatric medical records dating back to February

2018. (ECF No. 4-2, PageID.43–46). For instance, the ALJ addressed the diagnosis of bilateral carpal tunnel syndrome and subsequent release surgeries in January and March 2021. (*Id.* at PageID.43). He also discussed Plaintiff's September 2019 MRI which revealed mild degenerative disc disease of the cervical spine and moderate facet arthropathy of the lumbar spine for which she received injections. (*Id.* at PageID.42–44). The ALJ's synopsis likewise covered Plaintiff's generalized pain and related treatments. (*Id.* at PageID.43–45). His summary further detailed the diagnoses and treatment Plaintiff received for moderate major depressive order, PTSD, ADHD, borderline personality disorder, and anxiety. (*Id.*).

Notably, the medical evidence from 2022 included in the ALJ's discussion detailed the stability and even improvement of Plaintiff's conditions. In February 2022, Plaintiff reported that her new medication regime helped with her generalized pain and that her migraines improved when treated with Imitrex. (*Id.* at PageID.45). Despite experiencing panic attacks, Plaintiff was also working on coping skills and processing past trauma, engaging in some hobbies, and traveling with family. (*Id.*). Moving to 2023, Plaintiff had largely normal hematology and rheumatology workups, was on a successful weight-loss regimen, and was not seeking any other treatment for her migraines or carpal tunnel syndrome. (*Id.*).

And in the most recent records before the ALJ, Plaintiff's continued outpatient psychiatric therapy reflected that she was doing well. (*Id.* at PageID.46).

When Dr. Daniel examined Plaintiff's records in August 2022, the latest available data was from March 2021. (ECF No. 4-3, PageID.112–13). Critically, Dr. Daniel noted that, "I dont [sic] see much objective recent exam at all." (*Id.* at PageID.113). Indeed, Dr. Daniel determined that "some fairly recent objective exam" was needed; additionally, she wrote, "[s]ince the working RFC will not allow it will be Insufficient Evidence due to FTC to make an accurate assessment." (*Id.*).[2]

In its entirety, the ALJ said the following regarding Dr. Daniel's opinion:

> At the reconsideration level, [Disability Determination Services (DDS)] consultant Shanthini Daniel, M.D. found the claimant capable of performing a reduced range of light work but noted that there was very little updated medical evidence (4A). These findings are not persuasive. As noted, there is a large amount of medical evidence. The undersigned finds that these records support a finding that the claimant could perform a reduced range of sedentary work.

(ECF No, 4-2, PageID.47).

Upon review of the ALJ's consideration of the medical evidence and Dr. Daniel's medical opinion, the Court does not find Plaintiff's position persuasive. Crucially, Plaintiff failed to note that the ALJ acknowledged Dr. Daniel's

---

[2] Presumably, "FTC" means "failure to cooperate." This would seem accurate since Dr. Daniel recorded this statement in the context of Plaintiff's failure to provide updated records.

observation regarding the lack of updated medical evidence.  Since Dr. Daniel did not have updated information, the ALJ determined—in the very next sentence— that Dr. Daniel's opinion was not persuasive.  This was especially the case, according to the ALJ, given the breadth of medical evidence in the record, the most recent of which reflected stable physical and psychiatric symptoms.

In essence, the supportability factor did not favor Plaintiff because Dr. Daniel's opinion was not based on up-to-date objective medical evidence.  The lack of updated medical evidence also explains why the consistency factor did not favor Plaintiff—after all, Dr. Daniel's opinion could not be consistent with evidence that was not before her, namely medical evidence spanning the seventeen months from March 2021 to August 2022.  And since the ALJ had just detailed at length Plaintiff's medical evidence and concluded that it reflected an ability to perform a restricted range of sedentary work, he did not have to repeat that summary to show that the evidence is inconsistent with Dr. Daniel's outdated opinion.  *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 49, 457 (6th Cir. 2016) (determining that the ALJ's discussion of treatment records elsewhere in the decision was sufficient when determining that the medical opinion was inconsistent with the record).  So contrary to Plaintiff's suggestion that the ALJ blindly referred to the universe of medical evidence and divined the RFC, the ALJ carefully reviewed the medical evidence in the record and Dr. Daniel's evaluation

and concluded, like Dr. Daniel herself, that the opinion was not accurate because of the lack of up-to-date medical evidence.

While the ALJ did not use the express terms "supportability" or "consistency," he articulated why Dr. Daniel's opinion lacked support in the record and explained why the medical evidence was more consistent with an RFC determination of a restricted range of sedentary work.

Plaintiff is also incorrect regarding her argument that the ALJ's omission of a discussion on a specific limitation in Dr. Daniel's opinion amounted to reversible error.  As the Commissioner aptly pointed out, federal regulations required the ALJ to "consider[ ] the medical opinions . . . from that medical source . . . in a single analysis" using the supportability and consistency factors as well as any other factors "as appropriate."  20 C.F.R. § 404.1520c(b)(1).  Thus, "where a medical source opines on multiple functional abilities, the ALJ need not discuss each opinion individually; rather, the ALJ need only discuss the medical source's opinions as a whole . . . ."  *Trumble v. Comm'r of Soc. Sec.*, No. 2:22-CV-11917, 2023 WL 3312649, at *12 (E.D. Mich. Mar. 15, 2023), *report and recommendation adopted*, 2023 WL 3309838 (E.D. Mich. May 8, 2023).  Accordingly, the ALJ did not err in assessing Dr. Daniel's opinion rather than addressing each opined functional limitation individually.

16

Plaintiff only makes one argument to counter the Commissioner's position. She did not address Dr. Daniel's observation that she lacked recent objective examinations.  Instead, Plaintiff zeroed in on the Commissioner's description of Dr. Daniel's comment regarding limited jobs that required constant full neck movements as "vague."  She says that the ALJ did not dismiss Dr. Daniel's opinion as vague, so the Commissioner cannot rely on that argument.  But Plaintiff misreads the Commissioner's argument.  On that specific issue, the Commissioner asserted, correctly, that the ALJ had no obligation to review each individual limitation in Dr. Daniel's opinion.  Plaintiff, therefore, offers no substantive rebuttal to the Commissioner's arguments regarding supportability or consistency and has not shown that the ALJ committed reversible error by assessing Dr. Daniel's opinion as a whole.

### B.      The ALJ's Consideration of Dr. Shelby-Lane's Medical Opinion

Next, Plaintiff argues that the ALJ improperly relied on the October 2018 opinion of Dr. Shelby-Lane.  In her opinion, Dr. Shelby-Lane stated that Plaintiff "has chronic and occasional limitations with standing, walking, stooping, squatting, lifting, and bending."  (ECF No. 4-3, PageID.393).  The ALJ determined that "[t]hese opinions are only somewhat persuasive, as they are vague."  (ECF No. 4-2, PageID.47).  Even so, the ALJ observed that the RFC determination of a

reduced range of sedentary work accommodated Dr. Shelby-Lane's recommendations. (*Id.*).

Plaintiff says that the ALJ should not have put any weight into Dr. Shelby-Lane's opinion because it only had "diminished probative value" as a result of its vagueness. (ECF No. 9, PageID.8791–92) ("Thus, Dr. Shelby-Lane's opinion could not be relied on in reaching a [RFC] determination."). The Commissioner agrees that Dr. Shelby-Lane's opinion is vague. (ECF No. 13, PageID.8812). Yet the Commissioner says this is immaterial because the ALJ still accommodated these limitations by reducing the range of sedentary work to that "involving no more than two hours of standing and/or walking, only occasionally lifting more than five pounds, and only occasionally performing postural activities such as stooping, crouching, and kneeling." (*Id.* at PageID.8812–13) (citing ECF No. 4-2, PageID.41).

Plaintiff's principal case on this issue is *Wilson v. Colvin*, No. CV 15-13409, 2017 WL 370785 (E.D. Mich. Jan. 23, 2017), *report and recommendation adopted sub nom. Wilson v. Comm'r of Soc. Sec.*, No. 2:15-CV-13409, 2017 WL 710650 (E.D. Mich. Feb. 23, 2017).[3] As relevant here, the plaintiff there "argue[d] that the

---

[3] Plaintiff also cites *Heatherly v. Comm'r of Soc. Sec.*, No. 1:23-CV-02456-BMB, 2024 WL 4181711, at *13 (E.D. Mich. Sept. 12, 2024), *report and recommendation adopted*, 2024 WL 4458259 (E.D. Mich. Oct. 10, 2024) for the general proposition that a vague opinion has less probative value. *Heatherly*, in part, relied on *Wilson*. And Plaintiff cited back to *Wilson* in her reply brief. (ECF No. 14, PageID.8822–23).

ALJ erred as a matter of law by giving greater weight to the opinion of Dr. Ahmed, who did not examine Wilson, than to the opinions of Dr. Shelby-Lane and Dr. Monson, who did examine Wilson." 2017 WL 370785, at *4. Notably, the ALJ in that case gave some weight to Dr. Shelby-Lane's opinion that Wilson would "have difficulty with prolonged standing, stooping, squatting, lifting, and bending." *Id.* Indeed, just like the case here, the ALJ noted that Dr. Shelby-Lane's opinion "was vague and imprecise" but still afforded it some weight "to the extent it [was] consistent with a residual functional capacity for [a restricted range of] sedentary work . . . ." *Id.* at *3. In the end, the Court did not conclude that the ALJ's modest reliance on Dr. Shelby-Lane's vague opinion amounted to reversible error. Instead, the Court held that "Wilson's complaints regarding the ALJ's treatment of the medical opinions[were] without merit." *Id.* at *4.

The decision in *Wilson* therefore does not support Plaintiff's position. If it did, then the Court would have taken issue with the limited weight the ALJ placed on Dr. Shelby-Lane's "vague and imprecise" medical opinion. Rather, it would seem that a vague opinion logically has a reduced probative value, but that does not mean it has no value whatsoever. Since this case also involves a vague medical opinion from Dr. Shelby-Lane that is nevertheless consistent with a RFC for a reduced range of sedentary work, there is no reason to reach a different conclusion than the *Wilson* Court. That is, while Dr. Shelby-Lane's vague opinion

19

has less probative value, Plaintiff's "complaint[ ] regarding the ALJ's treatment of the medical opinion[ ] is without merit."

### C. Whether Dr. Rohde's Treatment Records contained a Medical Opinion

Plaintiff's third statement of error focuses on the treatment Plaintiff received from Dr. Rachel Rohde for her bilateral carpal tunnel syndrome.  After Plaintiff underwent carpal tunnel release surgery for both hands in January and March 2021, Dr. Rohde noted that "[p]atient will gradually advance activities up to 5 lb for approximately 6 weeks following surgery."  (ECF No. 4-3, PageID.1096, 1105).  Plaintiff says that this amounts to a functional limitation which the ALJ was required to address by law.  (ECF No. 9, PageID.8793) (citing *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003)).  Plaintiff posits that the ALJ's failure to address this limitation constitutes reversible error because Dr. Rohde determined that Plaintiff could not lift more than five pounds and sedentary work, according to federal regulations, involves lifting no more than ten pounds.  (*Id.*).  Thus, the argument goes, the ALJ could not have concluded that Plaintiff could perform sedentary work if he had properly considered Dr. Rohde's opinion and, by extension, would have found Plaintiff disabled.  (*Id.*).

In response, the Commissioner explains that the ALJ did not have to evaluate Dr. Rohde's treatment records because the records did not amount to a medical opinion according to federal regulations.  (ECF No. 13, PageID.8813–14).

Rather, the Commissioner describes Dr. Rohde's statement as medical advice designed to help Plaintiff recover from her surgeries.  (*Id.* at PageID.8813).  For her part, Plaintiff says that reframing Dr. Rohde's statement as advice is another impermissible post hoc rationalization.  (ECF No. 14, PageID.8823).

A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical and mental demands of work activities.  20 C.F.R. § 404.1513(a)(2).  And federal regulations require the ALJ to assess the persuasiveness of medical opinions.  20 C.F.R. § 404.1520c(b).  That said, ALJs need not analyze evidence that "is inherently neither valuable nor whether persuasive to the issue of whether you are disabled."  20 C.F.R. § 404.1520b(c).  Importantly, the Sixth Circuit has cautioned that the "term 'medical opinion' cannot be understood to encompass every piece of information that describes 'what [a claimant] can still do' only after manipulation and interpretation with supplemental evidence."  *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *3 (6th Cir. Nov. 22, 2022).

Plaintiff is correct that the ALJ did not explicitly address the identified instruction that Dr. Rohde gave to Plaintiff as she recovered from her carpal tunnel release surgeries.  At most, the ALJ noted that Dr. Rohde "advised" Plaintiff "to wear a wrist brace for a few weeks and to gradually increase her activity."  (ECF

21

No. 4-2, PageID.43).  That said, the Court agrees with the Commissioner—the ALJ did not need to address the persuasiveness of Dr. Rohde's instruction because it did not constitute a medical opinion.  Dr. Rohde recorded that Plaintiff will gradually increase activities up to five pounds during the six-week period following surgery. She did not, however, opine on what work activities Plaintiff could perform despite this limitation or opine on her future prognosis beyond the surgery's recovery window.  "Failure to specify any work activity plaintiff could still do despite her impairments is reason enough to conclude that the information provided by Dr. [Rohde] is not a medical opinion."  *Victoria B. v. Comm'r of Soc. Sec.*, No. 24-10481, 2025 WL 1484399, at *5 (E.D. Mich. Mar. 3, 2025) (quoting *Harper v. Comm'r of Soc. Sec.*, No. 5:21-CV-01078, 2022 WL 3028094, at *2–3 (N.D. Ohio Aug. 1, 2022)) (citation modified), *report and recommendation adopted sub nom. Banks v. Soc. Sec. Comm'r*, No. 2:24-CV-10481-TGB-CI, 2025 WL 972825 (E.D. Mich. Mar. 31, 2025); *see also Diggs v. Comm'r of Soc. Sec.*, No. 3:23-CV-247-DCP, 2024 WL 2278696, at *6 (E.D. Tenn. May 20, 2024) (same).

Plaintiff did not address the Commissioner's argument that Dr. Rohde's advice was not a "medical opinion" as that term is defined under federal regulations.  Rather, she focused on the Commissioner's characterization of Dr. Rohde's notes as "advice" and states that the ALJ did not say this in his decision. (ECF No. 14, PageID.8823–24).  Of course, the ALJ did not need to say anything

since Dr. Rohde's notes do not qualify as a medical opinion.  And to the extent that he did, the ALJ expressly referred to Dr. Rohde as providing advice regarding recovery.  (ECF No. 4-2, PageID.43) ("[Plaintiff] was *advised* to wear a wrist brace for a few weeks and to gradually increase her activity.") (emphasis added).  Indeed, Plaintiff seems to also tacitly recognize that Dr. Rohde did not provide a medical opinion since she did not include Dr. Rohde as a part of the section entitled, "Medical Source Opinions" in her principal brief.  (ECF No. 9, PageID.8784–86).

Like the Sixth Circuit indicated in *Robinson*, the term "medical opinion" is not all encompassing.  Here, Dr. Rohde's note on Plaintiff's post-surgery activity does not refer to any work activity Plaintiff can still do despite the related impairments.  Thus, Dr. Rohde's notation is not a medical opinion, and the ALJ did not commit a reversible error by not discussing the persuasiveness of that notation in his decision.

### D.    The ALJ's Consideration of the Medical Opinion Evidence

Plaintiff's final argument relies in part on the success of her other arguments.  She insists that the ALJ's determination is not supported by substantial evidence because he did not properly evaluate the opinion evidence in the record.  (*Id.* at PageID.8794–97).  The argument goes like this.  Because the ALJ deemed Dr. Daniel's opinion unpersuasive and found Dr. Shelby-Lane's opinion to be

"only somewhat persuasive," it is unclear how the ALJ reached his decision since (1) he found the opinion of Jonathan Curtis, D.C.,—which stated Plaintiff would struggle lifting more than fifty pounds but have no other work related restrictions—to be "somewhat persuasive"; and (2) he did not consider all the opinion evidence in the record (namely, Dr. Rohde's notes about Plaintiff's recovery from carpal tunnel surgery).  (*Id.* at PageID.8795).

This argument relies on *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) and its progeny, like *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011).  (ECF No. 9, PageID.8795–96).  The *Deskin* Court held that where the "transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or an outdated non-examining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing."  605 F. Supp. 2d at 912.  Even so, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment."  *Id.* (citing *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996); *see also Kizys*, 2011 WL 5024866, at *2; *John B. v. Comm'r of Soc. Sec.*, No. 22-12199, 2023 WL 3743869, at *5 (E.D. Mich. May 10, 2023) ("Even when a case is within

one of the *Deskin* circumstances, then an ALJ has discretion to develop an RFC without a proper medical opinion where the medical evidence shows relatively little physical impairment such that an ALJ can render a commonsense judgment about functional capacity.") (citation modified), *report and recommendation adopted sub nom. Bobee v. Comm'r of Soc. Sec.*, 2023 WL 3741135 (E.D. Mich. May 31, 2023).

Put simply, Plaintiff's position is that the ALJ lacked a medical opinion to support his RFC determination which means he impermissibly made up the RFC based on his own assessment of the record.  (ECF No. 9, PageID.8796) (citing *Scott v. Comm'r of Soc. Sec.*, No. 16-11922, 2017 WL 2837150, at *12 (E.D. Mich. May 23, 2017)) ("Courts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not play doctor."), *report and recommendation adopted*, 2017 WL 2857494 (E.D. Mich. June 29. 2017).

Notwithstanding Plaintiff's unsuccessful arguments thus far, Plaintiff's reliance on *Deskin* is shaky at best.  As many district courts have concluded, "[t]he application of *Deskin* and its progeny is improper, as it contradicts not only statutory law, but Sixth Circuit case law as well."  *Ashley B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-690, 2025 WL 957561, at *3 (N.D. Ohio Mar. 31, 2025); *Browning v. Soc. Sec.*, No. 1:24-CV-00538-BMB, 2024 WL 4866327, at *13 (N.D.

25

Ohio Nov. 22, 2024) (collecting cases criticizing *Deskin*), *report and recommendation*, 2025 WL 572539 (N.D. Ohio Feb. 21, 2025); *Carr v. Comm'r of Soc. Sec.*, No. 5:23-CV-00187-BMB, 2024 WL 1556398, at *11 (N.D. Ohio Jan. 8, 2024) ("A review of Sixth Circuit caselaw supports a finding that *Deskin* is not consistent with governing precedent."), *report and recommendation*, 2024 WL 1343473 (N.D. Ohio Mar. 30, 2024); *Sneed v. Comm'r of Soc. Sec.*, No. 12-CV-15203-DT, 2014 WL 861525, at *21–22 (E.D. Mich. Mar. 5, 2014) (recognizing criticism of *Deskin* as being inconsistent with Sixth Circuit precedent).

Indeed, the Sixth Circuit has recognized that "[a]n ALJ must consider 'all the relevant evidence in the record'—medical and non-medical alike—to determine a claimant's work capacity." *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (citing 20 C.F.R. § 404.1545(a)(1)). In doing so, it has rejected the argument that the ALJ cannot reach an RFC determination without a supportive medical opinion. *See id.* (rejecting contention that the ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]he Commissioner has final responsibility for determining

an individual's RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.") (citation modified).

Accordingly, Plaintiff's reliance on *Deskin* is misplaced.  She also made no argument in her reply brief addressing *Deskin*'s viability after the Commissioner referred to authority describing *Deskin*'s inconsistencies with Sixth Circuit precedent.

And in any event, Plaintiff's application of *Deskin* is not persuasive.[4]  For instance, Plaintiff suggests that the ALJ wrongly interpreted raw medical data when he considered the 2019 MRIs of her cervical and lumbar spines and stated that they "evidenced mild degenerative disc disease of the cervical spine and moderate degenerative facet arthropathy of the lumbar spine."  (ECF No. 4-2,

---

[4] *Deskin* applies "where an ALJ made an RFC determination based on no medical source opinion" or where "the ALJ made an RFC based on an outdated medical source opinion that does not include consideration of a critical body of objective medical evidence."  *John B.*, 2023 WL 3743869, at *4.  The first threshold circumstance does not apply here—the ALJ deemed two opinions "somewhat persuasive."  That said, the second threshold circumstance would likely apply here.  Dr. Shelby-Lane's October 2018 predates much of the medical evidence in the record, and the ALJ expressly noted that Dr. Curtis's opinion was not from an acceptable medical source because he is a chiropractor.  (ECF No, 4-2, PageID.47) (indicating that the "cumulative objective findings" from Plaintiff's chiropractic treatment reflect that she responded well to the treatment and suggest that she "would be able to perform at least some work activity.").

PageID.43).  Plaintiff says that the MRI's showed more than just the "mild" diagnosis the ALJ reached because "the MRI of the cervical spine also showed mild canal narrowing at C5-C6 as well as facet arthropathy in the upper cervical segments contributing to foraminal narrowing, most pronounced (moderate) on the right at C5-C6."  (ECF No. 9, PageID.8796) (citing ECF No. 4-3, PageID.401). But the ALJ did not interpret raw data when assessing the 2019 MRIs; instead, he reviewed the radiologist's interpretation of the raw data.  And radiological interpretations are the exact sort of evidence the ALJ can properly rely on in determining the RFC.  *See Ashley B.*, 2025 WL 957561, at *3.[5]  Thus, this is not a case in which the ALJ interpreted "raw medical data" and translated that data into functional limitations thereby distinguishing this action from *Deskin*.  *See Sneed*, 2014 WL 861525, at *22 (concluding that the case fell outside *Deskin*'s "narrow rule" where the ALJ did not interpret "raw medical data that a lay person is not competent to interpret"); *Woelk v. Comm'r of Soc. Sec.*, No. CIV. A. 13-12411, 2014 WL 2931404, at *8 (E.D. Mich. May 15, 2014) (same), *report and recommendation adopted*, 2014 WL 2931411 (E.D. Mich. June 30, 2014).

---

[5] What's more is that the ALJ's discussion of the 2019 MRI results reflect the radiologist's conclusions indicating "mild changes of degenerative disc disease in the mid cervical spine" and "facet arthropathy in the upper cervical segments" which was described as "pronounced (moderate)."  (ECF No. 4-3, PageID.401).  Plaintiff's suggestion that the MRI results revealed a more severe condition is merely her own reading of the radiologist's report without any supporting evidence.

Plaintiff also points out that the ALJ referred to the February 2018 MRI of her hands and stated that it showed "no signs of osseous erosive changes or synovitis." (ECF No. 4-2, PageID.43). But, Plaintiff says, the ALJ did not refer to the second "impression" from that MRI, namely that there was a "[r]emote right scaphoid bone fracture with cyst formation within the distal half of the scaphoid bone with osseous bridging." (ECF No. 4-4, PageID.1852). Again, however, the ALJ referred to the radiologist's notes regarding the MRI results, not the raw MRI scans themselves. Thus, the interpretation from raw medical evidence is missing here as well, (*id.* at PageID.1851);[6] consequently, *Deskin* does not apply. *See Sneed*, 2014 WL 861525, at *22; *Woelk*, 2014 WL 2931404, at *8.

And in any event, "the ALJ [is] not required to explain every piece of evidence in the record . . . ." *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445–46 (6th Cir. 2018) (citing *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). And Plaintiff says nothing about how this second

---

[6] It is also worth noting that the MRI was performed by the University of Michigan. The ALJ expressly noted that:

> many of the [medical] records, particularly those from the University of Michigan, do not provide any substantive information. The relevant information includes extensive medical workup, but her conditions have generally been managed on an outpatient basis with conservative treatment. The records evidence largely controlled symptoms and more activity than alleged in the function reports.

(ECF No. 4-2, PageID.42–43).

"impression," if accounted for, would change the RFC in her favor. *See Gower v. Colvin*, Case No. 2:13-CV-14511, 2014 U.S. Dist. LEXIS 180256, at \*49 (E.D. Mich. Oct. 30, 2014) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)) ("The ALJ's failure to discuss the Listing in depth is not reversible error, if it is error at all.  An ALJ does not have to cite to every piece of evidence to show she considered it."), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 3541 (E.D. Mich. Jan. 13, 2015).  Crucially, the 2018 MRI related to Plaintiff's bilateral hand pain; as the ALJ noted in his decision, Plaintiff did not follow-up on her hand pain until late 2020, after which time she was diagnosed with carpal tunnel syndrome and received corrective surgery that was beneficial.  (ECF No. 4-2, PageID.43).  So the ALJ adequately considered the medical evidence concerning the diagnosis, treatment, and recovery related to Plaintiff's hand pain.

At bottom, Plaintiff's reliance on *Deskin* is misplaced because that decision is inconsistent with controlling precedent.  Plaintiff's argument is also deficient because the ALJ referred to the radiologist's interpretations of Plaintiff's MRI results, not the raw scans themselves.  Consequently, this case is distinguishable from *Deskin*.  The ALJ reviewed the medical and non-medical evidence in the record and properly addressed the medical opinions in the record.  The ALJ's determination is therefore supported by substantial evidence and must be affirmed.

## VI.    CONCLUSION

Plaintiff has the burden of proof on her statements of error.  *Walters*, 127 F.3d at 529.  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, Plaintiff's *Motion for Summary Judgment* (ECF No. 9) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 13) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.


Date: March 17, 2026                              s/Curtis Ivy, Jr.
                                                  Curtis Ivy, Jr.
                                                  United States Magistrate Judge